```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RUTH BRATTAIN, individually,    )
and as guardian of H.W., a      )
minor child,                    )
                                )
            Plaintiffs,         )
                                )
        v.                      )        1:19cv1037
                                )
STANLY COUNTY BOARD OF          )
EDUCATION, et al.,              )
                                )
            Defendants.         )
```

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

This lawsuit arises out of alleged mistreatment of H.W., a minor child and student, by teachers and administrators of the Stanly County Schools system. Plaintiff Ruth Brattain -- H.W.'s grandmother and legal guardian -- brings a number of state and federal law claims against multiple defendants in various capacities: the Stanly County Board of Education, d/b/a Stanly County Schools ("BOE"); Daniel Goodman, individually and in his official capacity as principal of Locust Elementary School, a school owned and operated by Stanly County Schools; Leigh Hayes, individually and in her official capacity as Exceptional Children Director for Stanly County Schools; Shannon Batchelor, individually and in her official capacity as Director of Student Services for Stanly County Schools; Karen Morgan, individually as a teacher at Oakboro Elementary School, a school owned and operated

by Stanly County Schools; and Angela Tucker, individually as a teacher at Oakboro Elementary School.

Plaintiffs filed their original complaint on October 10, 2019 (Doc. 1), and Defendants filed a partial motion to dismiss and answer on January 31, 2020 (Doc. 5).[1] Plaintiffs responded with an amended complaint on February 20, 2020 (Doc. 8), and Defendants filed a partial motion to dismiss and answer on April 3 (Doc. 13). Before the court is Defendants' second partial motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rules of Civil Procedure 12(b)(1), (2), and (6), although Defendants only address the last ground.[2] Plaintiffs filed a response opposing Defendants' motion (Doc. 15), and Defendants filed a reply (Doc. 16). The motions are fully briefed and ready for decision.[3] For the reasons set forth below, Defendants' motion

---

[1] By combining their motion to dismiss with their answer, Defendants' filing violates Local Rule 7.3(a), which provides that "[e]ach motion shall be set out in a separate pleading." Because Plaintiffs have fully responded and not raised this defect, the court will proceed to the merits of the motion.

[2] While Defendants style their motion to dismiss as pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6), they do not actually make any arguments under Rules 12(b)(1) or 12(b)(2). Of course, a court can *sua sponte* review subject matter jurisdiction. Hicks v. Ferreyra, 965 F.3d 302, 310 (4th Cir. 2020). However, subject matter jurisdiction exists here in the form of federal question jurisdiction over Plaintiffs' federal-law claims, and the court has supplemental jurisdiction over the related state-law claims. Defendants do not make any arguments about personal jurisdiction. Accordingly, the court will review Defendants' motion under Rule 12(b)(6) alone.

[3] The court's analysis is made somewhat more difficult by a number of errors in Defendants' brief in support of their motion to dismiss. In particular, Defendants frequently cite to the original complaint, rather

2

to dismiss will be granted in part and denied in part.

## I.   BACKGROUND

The facts alleged in the amended complaint, viewed in the light most favorable to Plaintiffs, show the following:

H.W. was born prematurely and subjected to early intervention services due to concerns about in utero oxygen deficiency and exposure to illegal drugs. (Doc. 8 ¶ 19.) By time he enrolled in preschool in Stanly County Schools, he was diagnosed with developmental delays in speech and adaptive behavior and placed in the Exceptional Children program for students with disabilities; at this time, school records also documented aggression and oppositional defiance. (Id. ¶ 21.) At the end of his first year of preschool, school records "demonstrated indications of positive progress without any indication of oppositional defiant behaviors." (Id. ¶ 22.) Records the next year, his pre-kindergarten year in Stanly County Schools, "confirmed measurable progress," and he was placed in a regular classroom for kindergarten the following year. (Id. ¶¶ 23, 25.) Within the first three months of his kindergarten year, however, H.W. was suspended for threatening physical harm to his teachers and started

_____

than the amended complaint, and thereby address arguments that Plaintiffs do not make. In addition, there are numerous typos that lend to the confusion. See, e.g., Doc. 14 at 12 (referring to "Defendant City of Albemarle" when there is no such defendant); id. at 13 (referring to an "Equal Protection" claim when Plaintiffs do not appear to make any federal equal protection claims).

3

receiving behavioral health therapy and medications to manage irritability associated with autism and attention deficit hyperactivity disorder. (<u>Id.</u> ¶¶ 25-26.) At the time, he was also placed on a behavior intervention plan ("BIP"), to which he "initially responded well." (<u>Id.</u> ¶ 27.) However, by the end of his kindergarten year, in spring 2013, H.W.'s behavior had "regressed," he was placed in a more restrictive classroom setting, and he was prescribed additional medications to manage autism. (<u>Id.</u> ¶¶ 28-29.)

By spring 2014, H.W. "required additional intervention," and medical records confirmed "increased intensity and frequency of aggressive behaviors over the prior year." (<u>Id.</u> ¶ 31.) Around this time, James Wood, a services facilitator for the Stanly County Department of Health, reached out to administrators at H.W.'s school, Oakboro Elementary School, and offered to help coordinate supplemental services for H.W. (<u>Id.</u> ¶¶ 32-34.) According to Plaintiffs, Mr. Wood's efforts were "ignored." (<u>Id.</u> ¶ 34.) However, at the close of the school year, a school team met to approve a new BIP for H.W. for use during 2014-2015, his second-grade school year. (<u>Id.</u> ¶ 35.) The final plan was dated May 21, 2014, and was designed to decrease the intensity and duration of H.W.'s behavioral outbursts, or "meltdowns." (<u>Id.</u> ¶ 36.) The BIP included a tiered "action plan" for use when H.W. was having an outburst, to include isolating him from other students in the

4

classroom for no more than 15 minutes, escorting him to the principal's office where he would have 30 more minutes to calm down, before ultimately contacting his guardian and sending him home.  (<u>Id.</u> ¶¶ 37-40.)

H.W. started his second-grade school year August 20, 2014. (<u>Id.</u> ¶ 42.)  By September 8, Brattain, his guardian, learned that Defendants were using a "calm down" room for him that was not identified in his BIP.  (<u>Id.</u> ¶ 43.)  H.W. told Brattain that he was not supposed to tell anyone about the "bad room" and that he had been to the "bad room" a "bunch of times."  (<u>Id.</u> ¶ 44.) Brattain met with Karen Morgan, one of H.W.'s teachers, who initially denied, but ultimately acknowledged, using an alternative room.  (<u>Id.</u> ¶ 45.)  According to Plaintiffs, the room was "dark, dirty, and appeared to be used as a storage room for cleaning supplies.  The room did not have windows, cleaning supplies were stored on shelves accessible at a child's height, there was a hole in the ceiling with insulation falling through, electrical outlets lined the walls, and toys were intermingled on the shelves with cleaning supplies."  (<u>Id.</u> ¶ 46.)  Plaintiffs allege that H.W. was left in the room "unattended, unsupervised, with the door shut and lights off for extended periods of time," on "multiple occasions," at times without food and missing his medications.  (<u>Id.</u> ¶¶ 47-49.)

Brattain first met with school officials on September 8, 2014,

to discuss the seclusion room; the meeting was continued to allow county representatives to attend. (Id. ¶ 51.) A second meeting was held September 18, 2014, and was attended by Oakboro's principal, Goodman; H.W.'s teachers, Tucker and Morgan; and BOE representatives including Batchelor and Hayes. (Id. ¶ 52.) At this meeting, Tucker admitted to using the seclusion room, and Goodman confirmed it was employed at his direction to limit property destruction in his office. (Id. ¶ 53.) As a result of the meeting, a "more detailed plan" for H.W. was created that "confirmed appropriate safe spaces" and concluded that the group should reconvene if H.W.'s behavior problems continued. (Id. ¶ 56.)

H.W.'s "inappropriate behavior continued to increase throughout the fall semester," and Defendants did not reconvene. (Id. ¶ 57.) Plaintiffs allege that Defendants should have known that the seclusion room violated North Carolina law and Stanly County regulations and that BOE failed to take any action to discipline Goodman, Tucker, or Morgan or to offer assistance to H.W. after discovering the use of the seclusion room. (Id. ¶¶ 62-63.)

In January 2015, H.W. was suspended for making violent drawings. (Id. ¶ 65.) In February 2015, at the initiation of Brattain, Oakboro school and BOE officials had a meeting in which Brattain relayed concerns she had about H.W.'s safety. (Id. ¶ 71.)

6

At some point thereafter, H.W. was transferred to a new school, where his "behavioral outbursts improved immediately." (Id. ¶¶ 74, 76.) However, by April 2015, Brattain learned that H.W.'s teacher at his new school was stealing his medications, and Brattain removed H.W. from Stanly County Schools and enrolled him in the Cabarrus County School system. (Id. ¶¶ 77-78.) Plaintiffs allege that, as a result of these experiences, H.W. suffers from post-traumatic stress disorder ("PTSD") and panic attacks, now requires extensive therapy and medications, and "continues to test well below his peers and his behavioral adaptation skills are severely impaired." (Id. ¶¶ 68, 83-85.)

## II. ANALYSIS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). To survive a Rule 12(6)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In considering the motion, a court will "assume as true all . . . well-pleaded facts and draw all reasonable inferences in favor of the plaintiff." Nanni v. Aberdeen Marketplace, Inc., 878 F.3d 447, 452 (4th Cir. 2017). "Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations

7

to raise a right to relief above the speculative level so as to nudge the claims across the line from conceivable to plausible." Sauers v. Winston-Salem/Forsyth Cty. Bd. of Educ., 179 F. Supp. 3d 544, 550 (M.D.N.C. 2016) (alterations and quotations omitted).

### A. Official Capacity Allegations

Before turning to the merits of the amended complaint, the court first addresses two preliminary arguments raised by Defendants.

First, Defendants argue that Plaintiffs' complaint does not comply with mandatory pleading requirements to state individual-capacity claims, and so these claims should be dismissed. (Doc. 14 at 6-8.) This argument is without merit. As to the state-law claims, North Carolina requires a complaint to clearly state the capacity in which a public official is being sued, and if it is unclear, the courts will presume the official is being sued in his or her official capacity only. See White v. Trew, 736 S.E.2d 166, 168-69 (N.C. 2013); Mullis v. Sechrest, 495 S.E.2d 721, 723-25 (N.C. 1998). This generally requires the plaintiff to state the defendant's capacity in the caption, allegations, and prayer for relief. See White, 736 S.E.2d at 168-69. Plaintiffs clearly meet this standard. The caption of the amended complaint specifically states the capacity in which each Defendant is being sued. So, too, do the allegations (see Doc. 8 ¶¶ 8-12), the headings for

each cause of action,[4] and the prayer for relief (where each cause of action is referenced).  Not only does this comply with the letter of <u>White</u> and <u>Mullis</u>, it complies with the spirit as well -- "affording the defendant proper notice to prepare a defense." <u>See</u> <u>White</u>, 736 S.E.2d at 169.  There can be no doubt from the amended complaint in which capacity each Defendant is being sued. As to the federal-law claims, "This court has recognized that although the official capacity presumption may exist under North Carolina law, it does not apply in the context of a Section 1983 suit." <u>Doe v. Durham Pub. Sch. Bd. of Educ.</u>, No. 1:17CV773, 2019 WL 331143, at *7 (M.D.N.C. Jan. 25, 2019) (alterations and quotations omitted).  In any event, as discussed, Plaintiffs have clearly delineated the capacity in which each Defendant is being sued in the caption, allegations, and prayer for relief, which is more than sufficient.  <u>See</u> <u>id.</u> (plaintiff adequately pleaded individual-capacity § 1983 claims when the caption expressly stated that each defendant was being sued in their individual and official capacities even though the allegations and prayer for relief did not).

Second, Defendants argue that certain official-capacity claims should be dismissed as duplicative of the same claims

---

[4] For example, under the claim for "Negligent Inflection of Emotional Distress" the complaint reads "Defendants Morgan & Tucker Individually."

9

against BOE.[5] (Doc. 14 at 8-10.) Plaintiffs respond that it would be premature to dismiss on these grounds and suggest summary judgment might be a more appropriate time for the court to reconsider. (Doc. 15 at 9.) Defendants are correct. "It is duplicative to bring the same claim against a defendant in his official capacity and against the government entity that employs that defendant, and in such a case the official capacity claim should be dismissed." Howard v. City of Durham, No. 1:17CV477, 2018 WL 1621823, at *8 (M.D.N.C. Mar. 31, 2018) (citing Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004)); see also Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Accordingly, the court will dismiss the official-capacity claims as to Goodman, Batchelor, and Hayes where BOE is also named as a Defendant, i.e., the Fourteenth Amendment due process claim, the Rehabilitation Act of 1973 § 504 claim, and the North Carolina Constitution claim.[6]

---

[5] Defendants appear to believe that official-capacity claims have been brought against all five individual Defendants, but this is incorrect. Specifically, Plaintiffs bring official-capacity claims against only Goodman, Batchelor, and Hayes. And the only claims in which BOE is also named as a Defendant -- and hence could be considered duplicative of the official-capacity claims -- are the Fourteenth Amendment due process claim, the Rehabilitation Act § 504 claim, and the North Carolina Constitution claim.

[6] Defendants also argue that the official-capacity, state-law tort claims against Goodman, Hayes, and Batchelor should be dismissed because they

Having addressed these initial issues, the court now turns to the merits of Brattain's claims.

## B. Federal Claims

### 1. Fourteenth Amendment to the U.S. Constitution

Brattain's first cause of action is brought against all Defendants under 42 U.S.C. § 1983 and alleges violations of H.W.'s rights under the Fourteenth Amendment to the U.S. Constitution. (Doc. 8 ¶¶ 1, 87.) The court will first address the § 1983 claim as to the individual Defendants sued in their individual capacities, and then as to BOE.

#### a. Individual Defendants

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). For an individual to be liable under § 1983, "it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of respondeat superior has no application under this section." Wright v. Collins, 766 F.2d 841, 850 (4th

---

are barred by governmental immunity. (Doc. 14 at 10-12.) However, Brattain has not alleged any state-law tort claims as to those Defendants in their official capacities. The only state-law tort claim against Goodman, Hayes, and Batchelor is intentional infliction of emotional distress, which Brattain brings against Defendants solely in their individual capacities.

11

Cir. 1985) (citation and quotations omitted). "The first step in [a § 1983] claim is to identify the specific constitutional right allegedly infringed." Albright v. Oliver, 510 U.S. 266, 271 (1994). Here, Brattain states two specific constitutional rights that Defendants allegedly violated: H.W.'s property right in education and a right to bodily integrity. (Doc. 8 ¶ 87.)

When a state provides a free public education, as North Carolina does,[7] courts have found this creates a property interest that is protected by the Due Process Clause. See Pegram v. Nelson, 469 F. Supp. 1134, 1138 (M.D.N.C. 1979) (citing Goss v. Lopez, 419 U.S. 565 (1975)). This interest is more properly framed as a procedural due process right in the disciplinary suspension or academic dismissal setting, i.e., that a student has a right to notice and some type of informal hearing prior to being suspended from school. See id. Moreover, "[t]he property interest in education created by the state is participation in the entire process. The myriad activities which combine to form that educational process cannot be dissected to create hundreds of separate property rights, each cognizable under the Constitution." Id. at 1139 (citation omitted) (emphasis added). Recognizing the countervailing need for schools to maintain order and discipline,

---

[7] North Carolina provides a free public education "to every person of the State less than 21 years old, who has not completed a standard high school course of study." N.C. Gen. Stat. § 115C-1.

as well as for school officials to have some discretion in how they operate their schools, courts have been reticent to find a due process violation with every decision that results in a student's exclusion from some facet of the educational process, and prior cases have generally cabined due process right-to-education claims to situations of actual suspension or otherwise significant limitations that could reasonably amount to a student's "total exclusion" from school. See id. at 1140; see also O.V. v. Durham Pub. Sch. Bd. of Educ., No. 1:17CV691, 2018 WL 2725467, at *27 (M.D.N.C. June 6, 2018), report and recommendation adopted, No. 1:17CV691, 2018 WL 3370644 (M.D.N.C. July 10, 2018)(granting a motion to dismiss on a § 1983 right-to-education claim that alleged students with disabilities were being removed from general education classrooms and placed in segregated, special education-only classes).

Here, Plaintiffs allege multiple instances of in-school isolation that suggest that H.W. may have functionally experienced "total exclusion from the educational process." See Goss, 419 U.S. at 576. Specifically, Plaintiffs allege that H.W. was "left, forgotten . . . for extended periods of time, on multiple occasions" in the seclusion room. (Doc. 8 ¶ 49.) They allege that the "'bad room' was incorporated as a standard practice to manage [H.W.'s] meltdowns." (Id. ¶ 50.) And Brattain alleges she had no notice of the use of the room. Other courts reviewing cases

13

on similar facts have found, at least at the motion to dismiss stage, that such allegations can survive dismissal. See Williams v. Fulton Cty. Sch. Dist., 181 F. Supp. 3d 1089, 1131-32 (N.D. Ga. 2016) (complaint alleging that a special needs student was left in a "closet-like room," "repeatedly," and on "multiple occasions, sometimes up to hours at a time . . . just barely plausibly allege[s] that [the student] was submitted to enough lengthy timeouts that he was 'functionally' totally removed from the school environment without due process"); see also Laney v. Farley, 501 F.3d 577, 581-82 (6th Cir. 2007) (dismissing claim as to in-school suspensions but noting that "[u]nder certain circumstances, in-school isolation could well constitute as much deprivation of education as at-home suspension" depending "on the extent to which the student was deprived of instruction or the opportunity to learn" (citation omitted)); Orange v. County of Grundy, 950 F. Supp. 1365, 1368 (E.D. Tenn. 1996) (finding that use "of isolation as a form of punishment . . . [by placing students] in the text book storage room" for a full day without access to food or toilet facilities could implicate both substantive and procedural due process rights); but see Couture v. Bd. of Educ. of Albuquerque Pub. Sch., 535 F.3d 1243, 1257 (10th Cir. 2008) (placing disabled student in a timeout room 21 times for a total of 12 hours over two and one-half months does not violate due process although noting that "[a]t some point, punishment timeouts used excessively

14

might become the functional equivalent of the out-of-school suspension at issue in <u>Goss</u>"). It is a close question here. But at this preliminary stage and on the allegations before it -- where Plaintiffs allege that H.W. was placed in the seclusion room "for extended periods of time, on multiple occasions" and "forgotten" to the point of missing his medications and meals as part of a "standard practice" incorporated to manage his outbursts (Doc. 8 ¶¶ 47-50) -- the court finds it plausible that H.W.'s removal may have risen to the level of total exclusion from the school environment sufficient to state a due process claim. Whether the removals were so frequent and lengthy as to be characterized as "total exclusion" from the educational process -- facts uniquely within the knowledge of Defendants at this point -- should await further factual development.

As to H.W.'s right to bodily integrity, the Fourth Circuit has recognized that students have a due process right to bodily integrity when there are allegations of "malicious corporal punishment inflicted by school officials." <u>Meeker v. Edmundson</u>, 415 F.3d 317, 320 (4th Cir. 2005) (citing <u>Hall v. Tawney</u>, 621 F.2d 607 (4th Cir. 1980)). While most of the cases focus on excessive physical punishment, <u>see, e.g.</u>, <u>Hall</u>, 621 F.2d at 614 (paddling a student that resulted in hospitalization), this district has read Supreme Court and Fourth Circuit precedent for the proposition that "students have a liberty interest in freedom from unreasonable

15

restraint and mistreatment." See W.E.T. ex rel. Tabb v. Mitchell, No. 1:06CV487, 2008 WL 151282, at *4 (M.D.N.C. Jan. 10, 2008). Indeed, Mitchell denied a school district's motion to dismiss, finding that a teacher "maliciously placing masking tape over a disabled student's mouth whom she knew to have severe asthma, and subsequently forcefully ripping it off, violates his constitutional right to bodily integrity." Id. at *5. The present situation is analogous. Allegations that H.W., a special needs student, was placed in a dark seclusion room -- in direct violation of North Carolina law, Stanly County policy, and H.W.'s own BIP -- on multiple occasions and for extended periods of time, unsupervised, and within reach of cleaning supplies and electrical outlets, plausibly state a violation of his right to bodily integrity. Therefore, Brattain has pled, at this stage, two specific constitutional rights that Defendants allegedly violated.

In their brief, Defendants do not address the § 1983 claim as to Tucker and Morgan, H.W.'s teachers. Accordingly, Defendants have offered no grounds to dismiss this count, and their motion to dismiss will be denied as to these two Defendants. Moreover, the claim appears to be plausibly stated. As pleaded, both Morgan and Tucker admitted to placing H.W. in the seclusion room. (Doc. 8 at ¶¶ 45-47, 53.) Accepting this allegation as true for the purposes of a motion to dismiss, it states a § 1983 claim for a right to education and bodily integrity as to Tucker and Morgan.

16

Defendants Goodman, Hayes, and Batchelor argue that Brattain has failed to state a plausible § 1983 claim as to them. (Doc. 14 at 15-16.) This is true as to Hayes and Batchelor. Hayes and Batchelor both worked as directors in the Stanly County Schools central office. The complaint does not state that either put H.W. in a seclusion room directly or even knew about the use of the seclusion room prior to the September 18, 2014 meeting. Nor does the complaint allege that use of the seclusion room continued after that meeting. In other words, Plaintiffs have not shown that Batchelor and Hayes "directed, supervised, participated in, authorized or even . . . condoned by knowing acquiescence the specific incident upon which this claim for relief is based," i.e., use of the seclusion room. See Hall, 621 F.2d at 615.

Perhaps recognizing this, Plaintiffs also allege deliberate indifference on the part of Hayes and Batchelor by not removing H.W. from Morgan and Tucker's classroom after learning about the seclusion room. (Doc. 8 ¶¶ 89-92.) "Deliberate indifference is a very high standard -- a showing of mere negligence will not meet it. Actions that in hindsight are unfortunate or even imprudent will not suffice. Indeed, a supervisory official who responds reasonably to a known risk is not deliberately indifferent even if the harm is not averted." Doe, 2019 WL 331143, at *8-9 (quoting Baynard v. Malone, 268 F.3d 228, 236 (4th Cir. 2001) (citations omitted)). For example, while a principal's "failure to respond

17

to mounting evidence of potential misconduct" by a teacher might be sufficient for deliberate indifference, see Baynard, 268 F.3d at 236, mere negligence in responding to potential misconduct likely will not suffice, see Doe, 2019 WL 331143, at *9-11 (no deliberate indifference by principals to a teacher's sexual abuse of a student when the principals did not know about the abuse and otherwise acted promptly as to any allegations of inappropriate conduct).

Brattain has not alleged facts indicating that Hayes and Batchelor had "personal knowledge of and involvement in the alleged deprivation of [H.W.'s] rights" to education and bodily integrity as required under § 1983. See Wright, 766 F.2d at 850. Nor has Brattain shown that either acted with deliberate indifference to the fact that H.W.'s constitutional rights were being violated. Indeed, the opposite -- from the complaint it appears that once BOE learned of the seclusion room, both Hayes and Batchelor attended a meeting to discuss the situation with Brattain, and use of the room immediately stopped. (See Doc. 8 ¶¶ 51-52.) At that meeting, BOE officials also created a "more detailed plan" that "confirmed appropriate safe spaces" for H.W. (Id. ¶ 56.) Thus, the § 1983 due process claims against Hayes and Batchelor will be dismissed.

The final individual Defendant is Goodman. As a preliminary matter, Goodman argues that he is entitled to qualified immunity

for the § 1983 claim.[8] "Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity "is an affirmative defense that must be pleaded by a defendant official." Harlow, 457 U.S. at 815. School officials may assert a qualified immunity defense. See Doe, 2019 WL 331143, at *17. Because qualified immunity only protects actions within the scope of the official's discretionary authority, the defendant "bears the initial burden of demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties." Henry v. Purnell, 501 F.3d 374, 377 n.2 (4th Cir. 2007) (citation and quotations omitted). Once the defendant properly asserts qualified immunity, "[t]he plaintiff bears the burden of proof on the . . . question [of] whether a constitutional violation occurred." Id. at 377. If the plaintiff meets this burden, the defendant then bears the burden of proof on the question of whether the right in question was clearly established at the time of the

---

[8] Because the court has concluded that Brattain failed to state a § 1983 claim as to Hayes and Batchelor, it need not consider their qualified immunity defense.

alleged misconduct.  See id. at 378.

At this juncture, Goodman's qualified immunity defense stumbles at the first step.  Goodman bears "the initial burden of demonstrating that the conduct of which [Brattain] complains falls within the scope" of his duties.  See id. at 377 n.2.  "[A]n official who performs an act clearly established to be beyond the scope of his discretionary authority is not entitled to claim qualified immunity under § 1983."  In re Allen, 106 F.3d 582, 593 (4th Cir. 1997).  The complaint alleges that use of the seclusion room expressly violated North Carolina law, BOE policy, and H.W.'s own BIP.  (Doc. 8 ¶¶ 43, 60.)  As such, its use was "clearly established to be beyond [Goodman's] discretionary authority," and Goodman cannot assert a qualified immunity defense at this time.[9] See Allen, 106 F.3d at 593.

Turning to the merits, the court finds that Plaintiffs' § 1983 claim survives a motion to dismiss.  As pleaded, the seclusion room "was employed at [Goodman's] direction to limit destruction of property within his office."  (Doc. 8 at ¶ 53.)  The complaint also alleges that Goodman took steps to hide the use of the room. (Id. ¶ 58.)  Accepting this as true for the purposes of a motion

---

[9] Denying Goodman's qualified immunity defense at this time does not necessarily mean the issue is finally resolved against him.  See Swick v. Wilde, No. 1:10CV303, 2012 WL 3780350, at *15 & n.23 (M.D.N.C. Aug. 31, 2012) (denying an officer's qualified immunity defense at the summary judgment stage where it rested on a factual dispute but noting defendants remain entitled to assert the defense at trial).

to dismiss, as the court must, it finds that Plaintiffs have pleaded a § 1983 claim for a right to education and bodily integrity as to Goodman.

### b. Stanly County Board of Education

To succeed on a § 1983 claim against a municipality or municipal agency, Plaintiffs must demonstrate a constitutional violation as a result of an official policy, practice, or custom. White v. City of Greensboro, 408 F. Supp. 3d 677, 691 (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). A policy, practice, or custom for which a municipality may be held liable can arise in one of four ways: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (alterations and quotations omitted).

Plaintiffs do not clearly allege a precise BOE "policy, practice, or custom" that supposedly led to a violation of H.W.'s constitutional rights. Plaintiffs do not argue that use of the seclusion room itself was a policy or practice of BOE, and nor could they because, as Plaintiffs acknowledge, the express policy

21

of BOE was to <u>forbid</u> such use of seclusion.  (Doc. 8 ¶¶ 60, 96; <u>see also</u> Stanly County Schools Regulation Code 4302-R Rules for Use of Seclusion and Restraint in Schools.)  Further, the actions of Morgan, Tucker, and Goodman cannot impose liability on BOE, as "[i]t is well settled that 'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes." <u>Lytle</u>, 326 F.3d at 473 (citation omitted).  The complaint, construed in Plaintiffs' favor, reveals that once BOE discovered use of the seclusion room, it was not used again.

Plaintiffs also argue that BOE "developed and operated a pervasive culture and/or custom of deliberate indifference to the needs of exceptional children with the school district." (Doc. 8 ¶ 95.)  Again, "deliberate indifference" is a high bar, and Plaintiffs do not meet it here.  Plaintiffs plead very few facts upon which to predicate their claim of deliberate indifference. The sum total of these allegations is contained in two paragraphs of a 120-paragraph amended complaint: Plaintiffs allege that "Defendants' widespread deliberate indifference created a culture where teachers and administrators were permitted and encouraged to ignore the clearly identified behavioral needs of exceptional children like Minor Plaintiff by failing to create a safe and responsive learning environment" (<u>id.</u> ¶ 80); and that James Wood, a care services coordinator with Stanly County, said that his

22

efforts to coordinate resources for "multiple families with exceptional children" were "refused or at best, ignored" (id. ¶ 81). In assessing a complaint on a Rule 12(b)(6) motion, "mere legal conclusions are not accepted as true, and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" White, 408 F. Supp. 3d at 690-91 (quoting Iqbal, 556 U.S. at 678) (alterations omitted). Even when viewed in the light most favorable to Brattain, these allegations fail to support that BOE had a policy, practice, or custom of ignoring the needs of exceptional children as required to impose municipal liability under § 1983.[10] Defendants' motion to dismiss Plaintiffs' § 1983 claim as to BOE will therefore be granted.

### 2. Rehabilitation Act of 1973

Brattain's other federal claim alleges a violation of Section

---

[10] In fact, much of the rest of Plaintiffs' complaint belies the notion that BOE had a pattern or practice of ignoring the needs of exceptional children, at least as it pertains to H.W. Before the events in question in August and September 2014, it appears BOE tried a variety of approaches with H.W., with some success. In 2010, H.W. was enrolled in a BOE preschool where he "demonstrated indications of positive progress." (Doc. 8 ¶ 22.) He next attended pre-kindergarten at another BOE school, where he received positive year-end reviews and received an end-of-year Individualized Educational Plan. (Id. ¶ 23.) The year after that, H.W. was initially placed in a regular classroom for kindergarten until behavioral issues led to the creation of a BIP, to which H.W. "initially responded well." (Id. ¶¶ 25-27.) When his behavior regressed, his school created a new BIP for use in the 2014-15 school year. (Id. ¶ 35.) (It is this BIP that Plaintiffs allege Defendants violated with the seclusion room.) There is no allegation that Brattain was dissatisfied with BOE's treatment of H.W. prior to the 2014-15 school year and the seclusion room.

504 of the Rehabilitation Act of 1973 and is brought against all Defendants. (Doc. 8 ¶¶ 108-116.) The factual basis for this cause of action is the same as the others. Defendants have not moved to dismiss this claim, except insofar as it is included in their contention that the official-capacity claims against Goodman, Batchelor, and Hayes are duplicative of the claim against BOE. For the reasons stated above, Defendants are correct, and the official-capacity claims against these three Defendants will be dismissed. In so doing, the court renders no opinion on the merits of this claim.

### C. North Carolina State Claims

#### 1. Intentional Infliction of Emotional Distress

Plaintiffs bring a claim of intentional infliction of emotional distress against each of the five individual Defendants in their individual capacities. (Doc. 8 ¶¶ 99-103.)

In North Carolina, the tort of intentional infliction of emotional distress requires proof of "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." Dickens v. Puryear, 276 S.E.2d 325, 335 (N.C. 1981). The tort can also exist where the defendant's actions indicate a reckless indifference to the possibility of severe emotional distress. Id. "Extreme and outrageous conduct" exists "when a defendant's conduct exceeds all bounds usually tolerated by decent society." Watson v. Dixon, 502

24

S.E.2d 15, 19 (N.C. App. 1998), aff'd, 532 S.E.2d 175 (N.C. 2000)
(citation omitted). "Severe emotional distress" means "any
emotional or mental disorder, such as, for example, neurosis,
psychosis, chronic depression, phobia, or any other type of severe
and disabling emotional or mental condition which may be generally
recognized and diagnosed by professionals trained to do so."
Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 395 S.E.2d
85, 97 (N.C. 1990).

Once again, Defendants do not address Tucker and Morgan in
their motion to dismiss. Accordingly, the court makes no
determination as to them.[11]

Defendants Goodman, Hayes, and Batchelor argue that they are
entitled to public official immunity for Brattain's intentional
infliction of emotional distress claim. (Doc. 14 at 18-21.) But
public official immunity is not a defense to an intentional tort.
Hawkins v. State, 453 S.E.2d 233, 242 (N.C. App. 1995) (affirming
the denial of a motion to dismiss and noting that "[b]ecause malice
encompasses intent . . . if a party alleges an intentional tort
claim, the doctrine of qualified immunity does not immunize public
officials or public employees from suit in their individual
capacities."); Wells v. N.C. Dep't of Correction, 567 S.E.2d 803,

---

[11] Plaintiffs' alternative claim for negligent infliction of emotional
distress against Morgan and Tucker in their individual capacities (Doc.
8 ¶¶ 104-107) is similarly not challenged at this time.

813 (N.C. App. 2002) ("[I]f the plaintiff alleges an intentional tort claim . . . neither a public official nor a public employee is immunized from suit in his individual capacity."). Public official immunity is therefore not a defense to this claim.

Turning to the merits, the court finds that Brattain has stated a claim for intentional infliction of emotional distress as to Goodman. Plaintiffs allege that the seclusion room was "employed at [Goodman's] direction to limit destruction of property within his office." (Doc. 8 ¶ 53.) This was in direct violation of H.W.'s BIP, BOE policy, and state law. (Id. ¶¶ 38-40, 60.) Goodman's alleged actions evince at least a reckless disregard for the possibility of causing severe emotional distress. And Plaintiffs allege that, as a consequence, H.W. has been diagnosed with PTSD and requires medication and ongoing therapy by medical providers. (Doc. 8 ¶¶ 68, 83, 103.) Accordingly, Plaintiffs have stated a plausible claim as to Goodman.

The same cannot be said for Hayes and Batchelor. Like Brattain's § 1983 claim, the complaint pleads no facts suggesting that either Hayes or Batchelor knew about, condoned, or otherwise participated in the use of the seclusion room. And both appear to have taken steps to prohibit its use after they found out about it, as evidenced by a modified behavioral plan after the September 18, 2014 meeting "that provided a variety of 'safe time out areas

26

[that] would be in Minor Plaintiff's best interest.'" (Doc. 8 ¶ 56.) There are no allegations that the seclusion room continued after this meeting. Even assuming that Hayes and Batchelor could have subsequently removed H.W. from Morgan and Tucker's classroom, the failure to do so does not rise to "extreme and outrageous conduct" required for an intentional infliction of emotional distress claim. Cf. Sauers, 179 F. Supp. 3d at 553 (allegations of bullying by school officials do not "show conduct that goes beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" as required under North Carolina law) (quotations and citation omitted). Accordingly, Defendants' motion to dismiss Brattain's intentional infliction of emotional distress claim as to Hayes and Batchelor will be granted.

### 2. North Carolina Constitution

Finally, and in the alternative, Plaintiffs allege that Defendants' actions violated Article I, Sections 1, 15, and 19 of the North Carolina Constitution. (Doc. 8 ¶¶ 117-120.) They bring this claim as to all Defendants.

As to the individual Defendants, "it is a matter of 'fundamental jurisprudence the [North Carolina] Constitution itself does not recognize or create rights which may be asserted against individuals.'" Sauers, 179 F. Supp. 3d at 558 (quoting Corum v. Univ. of N.C., 413 S.E.2d 276, 292–93 (N.C. 1992).

27

Accordingly, the court will dismiss this claim as to the individual Defendants.

As to BOE, Brattain can only bring a direct claim under the North Carolina Constitution if there is no adequate state-law remedy available to provide relief. See Edwards v. City of Concord, 827 F. Supp. 2d 517, 521 (M.D.N.C. 2011) ("To assert a direct constitutional claim . . . a plaintiff must allege that no adequate state remedy exists to provide relief for the injury." (quoting Copper v. Denlinger, 688 S.E.2d 426, 428 (N.C. 2010)). Direct constitutional claims "protect a plaintiff's right to redress when doctrines like sovereign immunity preclude the possibility of common law remedies." Swick, 2012 WL 3780350, at *31 (citing Craig v. New Hanover Cnty. Bd. of Educ., 678 S.E.2d 351, 355 (N.C. 2009)).

Here, the court has denied Defendants' assertion of public official immunity for the North Carolina tort claim of intentional infliction of emotional distress and is permitting the claim to go forward as to Defendants Goodman, Morgan, and Tucker. In other words, Brattain is able to "enter the courthouse doors and present [her] claim." See id. Because she has adequate state remedies available, the court will dismiss her claims under the North Carolina Constitution.

### D. Punitive Damages

Finally, Plaintiffs' amended complaint seeks punitive

damages.  (Doc. 8 at 25 ¶ 2.)  Defendants move to dismiss claims for such relief on the grounds that punitive damages are not available against a municipal government or against individuals to the extent the allegations amount to negligence.[12]  (Doc. 16 at 10-11.)

Based on the foregoing, the only remaining claims are a Rehabilitation Act claim against BOE and several claims against individual Defendants in their individual capacities.  As to the Rehabilitation Act claim against BOE and all five individual Defendants, punitive damages may not be awarded in suits brought under § 504 of the Rehabilitation Act.  Barnes v. Gorman, 536 U.S. 181, 189 (2002).

As to the Fourteenth Amendment § 1983 claims, Defendants are correct that neither municipalities nor officials sued in their official capacity are liable for punitive damages under § 1983.  See Iglesias v. Wolford, 539 F. Supp. 2d 831, 841 (E.D.N.C. 2008).  However, the only remaining § 1983 claims are against Defendants Goodman, Morgan, and Tucker in their individual capacities.  Punitive damages may be awarded in a § 1983 action against individual public officials where the defendant's conduct is shown

---

[12] While not technically a "claim," other courts have dismissed a plaintiff's request for punitive damages at the motion to dismiss stage where the defendant has properly moved for dismissal and where dismissal is otherwise appropriate.  See, e.g., Iglesias v. Wolford, 539 F. Supp. 2d 831, 841 (E.D.N.C. 2008); Googerdy v. N.C. Agr. & Tech. State Univ., 386 F. Supp. 2d 618, 625 (M.D.N.C. 2005).

to be "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983); Johnson v. City of Fayetteville, 91 F. Supp. 3d 775, 817 (E.D.N.C. 2015). This threshold applies even where the underlying standard of liability for compensatory damages is one of recklessness. Smith, 461 U.S. at 56. Here, Plaintiffs allege that Defendants' placement of H.W. in the "bad room" "shocked[ed] the conscience" and was "inspired by malice [and] corruption." (Doc. 8 ¶ 98.) These allegations, along with the facts alleged, are sufficient to state a claim at this early stage. It will be up to the factfinder to determine if the individual Defendants are liable and, if so, if their actions merit punitive damages.

As to the individual-capacity intentional infliction of emotional distress claims as to Defendants Goodman, Morgan, and Tucker, punitive damages are available in an intentional infliction of emotional distress claim because a required element for such a claim is "extreme and outrageous conduct," which satisfies the necessary aggravating factor. See Watson v. Dixon, 511 S.E. 2d 37, 41 (N.C. App. 1999), aff'd, 532 S.E.2d 175 (N.C. 2000); N.C. Gen. Stat. § 1D-15. Here, too, Plaintiffs allege that Defendants' actions "were extreme and outrageous and exceed all bounds usually tolerated by decent society." (Doc. 8 ¶ 100.)

30

Again, it would be up to the factfinder to determine liability and decide whether punitive damages are available in this instance.

Accordingly, the court will dismiss Plaintiffs' request for punitive damages as to the Rehabilitation Act claims but otherwise deny Defendants' motion to dismiss punitive damages as to the other remaining claims.

## III. CONCLUSION

For the reasons stated above,

IT IS THEREFORE ORDERED that Defendants' motion to dismiss (Doc. 13) is GRANTED IN PART AND DENIED IN PART as follows:

1. Defendants' motion to dismiss Plaintiffs' Section 1983 Fourteenth Amendment claim as to Defendants Hayes, Batchelor, and BOE is GRANTED, and those claims are DISMISSED.

2. Defendants' motion to dismiss Plaintiffs' intentional infliction of emotional distress claim as to Defendants Hayes and Batchelor is GRANTED, and those claims are DISMISSED.

3. Defendants' motion to dismiss Plaintiffs' claims under the North Carolina Constitution as to all Defendants is GRANTED, and those claims are DISMISSED.

4. Defendants' motion to dismiss claims for punitive damages is GRANTED as to the remaining Rehabilitation Act claims.

5. Defendants' motion to dismiss is otherwise DENIED. As a result, the following claims will proceed: Plaintiffs' Section 1983 Fourteenth Amendment claim as to Defendants Goodman, Tucker,

31

and Morgan (except as to official-capacity claims against the individual Defendants); Plaintiffs' claim under the Rehabilitation Act of 1973 as to all Defendants (except as to official-capacity claims against the individual Defendants); Plaintiffs' claim for intentional infliction of emotional distress as to Goodman, Tucker, and Morgan; and Plaintiffs' claim for negligent infliction of emotional distress as to Tucker and Morgan.

/s/   Thomas D. Schroeder
United States District Judge

October 28, 2020